UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DAIQUAN MCFERSON, <br>    Plaintiff, <br><br>  v. <br><br> P.O. BRIAN GILDEN and CITY OF GARY, <br>    Defendants. | ) <br> ) <br> ) <br> )   CAUSE NO.: 2:16-CV-186-JVB-JPK <br> ) <br> ) <br> ) |

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 40], filed November 30, 2018. Plaintiff DaiQuan McFerson alleges that Defendant Brian Gildon[1] ("Gildon") used excessive force when arresting him, in violation of the Fourth Amendment and 42 U.S.C. § 1983, and that Defendant City of Gary was required to indemnify any judgment against Gildon. After Defendants filed this motion for summary judgment on both counts, McFerson filed a response on February 1, 2019, and Defendants replied on February 15, 2019.

## SUMMARY JUDGMENT STANDARD

Rule 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find" for the non-movant. *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations omitted). To demonstrate a genuine issue of fact, the nonmoving

---
[1] Gildon is incorrectly named as "Gilden" in the Complaint.

party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). In viewing the facts presented, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *Liberty Lobby*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). A court's role is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but to determine whether there is a genuine issue of triable fact. *Liberty Lobby*, 477 U.S. at 249-50.

## MATERIAL FACTS

On July 15, 2015, Plaintiff DaiQuan McFerson was picked up by three friends traveling in a stolen car in Gary, Indiana. Mot. Ex. 2, Deposition of DaiQuan McFerson [DE 42-2], 57:10-58:14. The friends allowed McFerson, an inexperienced driver without a license, to drive the car. *Id.*, 57:17-22, 62:11-63:7. McFerson drove "reckless[ly]," making hard turns and driving 50 miles per hour through residential areas. *Id.*, 71:7-22. The Gary police were alerted, and Officer Jeremy Joseph was dispatched to the corner of 6th Avenue and Washington Street in Gary. Mot. Ex. 1, Deposition of Jeremy Joseph [DE 42-1], 5:24-6:1.

When Joseph arrived, he recognized the car as one he had reported as stolen the day before. *Id.*, 7:20-8:1. Joseph concluded that there was probable cause to pursue McPherson, based on his belief that the vehicle was stolen and the report that a car matching that description had been driving recklessly. *Id.*, 13:17-14:15. Joseph called for another officer, Defendant Brian Gildon, to provide backup. When Gildon arrived, Joseph activated the lights and sirens on his police car. Mot. Ex. 3, Deposition of Brian Gildon [DE 42-3], 35:11-17. Rather than pulling over, McFerson drove

away. McFerson Dep. 78:10-13. McFerson led police on a chase that lasted "five to ten minutes," during which he drove 30 to 50 miles per hour through residential areas. *Id.*, 78:21-24, 79:20-24; Gildon Dep. 36:17-25. Eventually, McFerson drove behind a church and ran out of the car with two of the passengers. McFerson Dep. 82:9-22.

### Defendants' Alleged Facts

At this point, the parties' stories diverge. Defendants say that Gildon, using his loudspeaker, told McFerson to stop and warned that he would use his police dog to apprehend him if he did not stop. Gildon Dep. 39:11-15. When McFerson did not stop, Gildon chased McFerson on foot into an alley. *Id.*, 41:2-12. After another warning, Gildon released Onyx, his police dog. *Id.*, 41:13-18, 42:16-22. McFerson tried to escape, but Joseph had now blocked the entrance to the alley with his car. McFerson Dep. 90:3-4. Both officers ordered McFerson to stop, but he kept running. Gildon Dep. 50:7-9; Joseph Dep. 10:11-13. Gildon ordered Onyx to apprehend McFerson, and the dog bit McFerson's left calf, causing him to fall down. Gildon Dep. 50:9-10, 54:10-19, 55:13-18. Gildon then pulled Onyx off McFerson. *Id.*, 55:19.

### Plaintiff's Alleged Facts

McFerson presents a different version of the facts. McFerson acknowledges that he ran from the police on foot, but states that the police never warned him to stop. Resp. Ex. 1 [DE 50-2], McFerson Dep. 93:11-18. While he was running, one of the officers pulled up next to him and tried to hit him with his car. *Id.*, 93:20-94:2. The chase ended when Joseph, still in his police car, intercepted McFerson as he was running away from the dog. *Id.*, 94:7-22. At that point, McFerson surrendered by putting his hands up and "going down." *Id.*, 95:5-8. A witness watching from her balcony, Eyricka Perry, stated that McFerson went to his knees and put his hands up after the police car intercepted him. Resp. Ex. 2 [DE 50-3], Deposition of Eyricka Perry, 10:17-21.

3

After McFerson surrendered, the officers allowed Onyx to bite McFerson. McFerson estimates that 15 seconds passed between his surrender and when the dog started to bite him. McFerson Dep. 97:7-18. McFerson tried to pull Onyx away by choking the dog by its collar, but the dog was not affected. *Id.*, 99:9-18. The officers did not try to stop Onyx, but ordered McFerson to get his hands off the dog. *Id.*, 99:23-100:9; Perry Dep. 39:20-23. McFerson estimates that he was bitten between three and ten times over "a minute and a half." McFerson Dep. 100:2-6, 111:23-112:14.

## ANALYSIS

**Count 1: Excessive Force**

McFerson alleges that Gildon used excessive force during the arrest. When a plaintiff alleges excessive force, the officer's conduct is assessed using the Fourth Amendment's "reasonableness" standard. A police officer's use of force is unconstitutional if "judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 486 (7th Cir. 2011). What constitutes "reasonable" force depends on the specific circumstances of the arrest, including the severity of the crime, the threat posed to the officers and others, and whether the suspect is trying to resist or flee. *Weinmann v. McClone*, 787 F.3d 444, 448 (7th Cir. 2015); *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012). In this circuit, it is well-established that officers cannot use "significant force" on a non-resisting or passively resisting suspect. *Becker v. Elfreich*, 821 F.3d 920, 927 (7th Cir. 2016); *Phillips*, 678 F.3d at 529 (7th Cir. 2012).

Defendants argue that the officers were justified in using the dog to apprehend McFerson based on the severity of the crime and the fact that McFerson was trying to flee on foot, among other factors. McFerson argues that it was not appropriate to use the police dog because he

4

surrendered before the dog reached him, and that the police allowed the dog to attack him for too long.

Clearly, Gildon's initial decision to deploy Onyx would not have violated the Fourth Amendment. Granting all reasonable inferences to McFerson, at the time Onyx was released, McFerson was running from the police, including at least one officer who chased him on foot and at least one who was driving. In briefing, McFerson argues that although he left the car, he immediately surrendered when he encountered Joseph's car, so this was not a "foot chase" justifying the use of a police dog. But while most of the chase apparently happened with McFerson driving, his testimony was clear that as the police cars closed in, he began running. *See* McFerson Dep. 92:9-15 ("'Officers . . . pursued the vehicle into a lot where the driver and three other suspects got out and ran from the vehicle'; is that true?" "Yes."). McFerson testified that he would have kept running if the alley had been clear. *Id.*, 90:1-4. Courts have generally held that the police can use a dog to catch a motorist who is fleeing on foot after committing a crime that has caused a danger to others. *See*, *e.g.*, *Strickland v. Shotts*, 155 F. App'x 908 (7th Cir. 2005); *Tilson v. City of Elkhart, Ind.*, 96 F. App'x 413, 418 (7th Cir. 2004).

Next, the Court considers whether McFerson's alleged late surrender made the use of the police dog unreasonable. Defendants characterize McFerson's act as a "last-minute surrender," and argue that (1) it would have been "futile" for Gildon to try to stop Onyx because of how close they were to McFerson at the time of the surrender; and (2) Gildon did not have to take the surrender at face value because of McFerson's conduct during the chase.

Defendants' arguments seem to be premised on the idea that any surrender by McFerson would have occurred just as he was about to be caught. However, for purposes of summary judgment, the Court accepts the allegation by the non-movant, McFerson, that he fell to his knees

5

and put his hands up about 15 seconds before he was bitten.[2] For that reason, Defendants' reliance on *Johnson v. Scott*, 576 F.3d 658 (7th Cir. 2009), is misplaced. In *Johnson*, a suspect was bitten by a police dog after he surrendered when the officer and his dog were six to eight feet away, and there "could not have been more than one second" between the surrender and the dog bite. *Id.*, 659-660. The officers in this case allegedly had 15 seconds. A reasonable jury could find that in that time, Gildon should have stopped Onyx from biting McFerson.[3] *See, e.g., Becker*, 821 F.3d at 927 ("[J]ust two seconds after he released [a police dog], Officer Elfreich encountered Becker toward the bottom of the stairs with his hands above his head. At this point, Officer Elfreich should have recognized that Becker . . . was in the process of surrendering."); *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014) (breaking a suspect's jaw to conduct an arrest was unreasonable when he "had been motionless for upwards of ten seconds").

Defendants argue that, like the officer in *Johnson*, Gildon could not assume that McFerson's surrender was genuine, because he had been running from the police. But in *Johnson*, there was serious doubt that the suspect was actually subdued, because he was suspected to have a weapon and his surrender consisted of raising his hands and saying "I give up." 576 F.3d at 660. McFerson alleges that he dropped to his knees – a much stronger indication that he was subdued – and there was no suggestion that he was armed. Contrary to Defendants' argument, McFerson's initial attempt to flee does not negate his alleged surrender. *Miller*, 761 F.3d at 829 ("The prohibition against significant force against a subdued suspect applies notwithstanding a suspect's

---

[2] Defendants attempt to discredit Perry's corroborating testimony of the alleged surrender by arguing that it was "questionable" she could see the incident from her house, based on markings she made on a map during her deposition. On summary judgment, the Court does not assess witness credibility, and disregards testimony favorable to the non-movant only when "blatantly contradictory" to the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The map does not clearly show that Perry could not have seen the incident, *see* Mot. Ex. 6 [DE 40-6], so Defendants' argument is irrelevant to summary judgment.

[3] No party presented evidence as to how quickly Gildon could have stopped Onyx if Gildon had tried to do so.

previous behavior—including resisting arrest"); *see also Alicea v. Thomas*, 815 F.3d 283, 289 (7th Cir. 2016) ("While surrender is not always genuine, it should not be futile as a means to de-escalate a confrontation with law enforcement.").

McFerson also alleges that once the dog was on him, the police took too long to intervene. Even though McFerson tried to resist the dog, his allegation that Onyx bit him three to ten times over a minute and a half, with no intervention by the police, could also support an inference of excessive force. *See Becker*, 821 F.3d at 927-28 (holding that it was unreasonable to allow a dog to continue biting a suspect who attempted to surrender); *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010) ("Force . . . becomes increasingly severe the more often it is used; striking a resisting suspect once is not the same as striking him ten times.").

Defendants argue that even if the force used was unreasonable, Gildon is entitled to qualified immunity. Qualified immunity is a valid defense if a reasonable officer "could have believed [the arrest] to be lawful, in light of clearly established law." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). To defeat qualified immunity on an excessive force claim, a plaintiff must either point to a closely analogous case that established a right to be free from the type of force in question, or show that the force was so plainly excessive that, as an objective matter, the officer would have been on notice that he was violating the Fourth Amendment. *Weinmann v. McClone,* 787 F.3d 444, 450 (7th Cir. 2015) (citing *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013)); *Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008) (citing *Clash v. Beatty*, 77 F.3d 1045, 1047-48 (7th Cir. 1996)). If there is no controlling precedent, the Court must determine "whether there was such a clear trend in the case law . . . that the recognition of the right by a controlling precedent was

merely a question of time." *Phillips.*, 678 F.3d at 528 (citing *Estate of Escobedo v. Butler*, 600 F.3d 770, 781 (7th Cir. 2010)); *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000).

No party has identified a "clearly analogous case" of an apparently unarmed suspect who drove dangerously from police, and then fled on foot, but surrendered several seconds before a police dog bit him. However, it is well-established that (1) officers cannot use "significant force"[4] on a non-resisting suspect; and (2) a suspect's previous attempts to flee do not negate his subsequent surrender. *See* p. 6-7, *supra*. Given this clearly established law, no reasonable officer could consider the events alleged by McFerson to constitute a lawful exercise of force.

**Count 2: Indemnification**

McFerson also brings an indemnification claim against Defendant City of Gary, alleging that because Gildon acted within the scope of his employment as a Gary police officer, the City must pay any judgment against Gildon. In Indiana, when a public employee is subject to personal liability for acts within the scope of his employment that violate federal civil rights law, the employing entity must pay "any judgment (other than for punitive damages) of the claim or suit." I.C. § 34-13-4-1. However, "the duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit." *Nationwide Ins. Co. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995); *see also Hobson v. Dominguez*, No. 2:10-CV-429, 2012 WL 4361537 at *16 (N.D. Ind. Sept. 24, 2012); *Sowell v. Dominguez*, No. 2:09-CV-47, 2011 WL 294758, at *14 (N.D. Ind. Jan. 26, 2011). Because liability has yet not been determined, the claim against Defendant City of Gary will be dismissed without prejudice. *Hunter v. Long*, No. 2:15-CV-475, 2019 WL 4695463, at *4-5 (N.D. Ind. Sept. 26, 2019).

---

[4] The bite of a police dog is "significant force." *See Becker*, 821 F.3d at 928; *see also Mason v. Hamilton Cty.*, 13 F. Supp. 2d 829, 834-35 (S.D. Ind. 1998) (discussing the force of police dog bites and the likelihood of injury to the suspect).

8

**CONCLUSION**

For the reasons described above, the Court **GRANTS in part** Defendants' Motion for Summary Judgment [DE 40], and **DISMISSES Count 2 without prejudice** for lack of subject matter jurisdiction. Because no allegations remain pending against it, the City of Gary is **DISMISSED** from this action. The Court **DENIES** the motion as to Count 1, which remains pending against Defendant Gildon. The Court **ORDERS** the remaining parties to file a status report, addressing the status of this case as to Count 1, by **January 13, 2021**.

SO ORDERED on December 23, 2020.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT
